UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| C. K.,<br><br>                                     Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA; MARIA CARRIEDO-CENICEROS, M.D., an individual; and DOES 1 through 50, inclusive,<br><br>                                     Defendants. | Case No.: 19-CV-2492 TWR (RBB)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT CARRIEDO-CENICEROS' MOTION FOR STAY AND SUBSTITUTION OF THE UNITED STATES**<br><br>(ECF No. 19) |

Presently before the Court is Defendant Maria Carriedo-Ceniceros' Motion for Stay of the Proceedings and Substitution of the United States ("Mot.," ECF No. 19), as well as Plaintiff C.K.'s Non-Opposition to Motion for Stay of the Proceedings and Substitution of the United States and Opposition to Request for Stay ("Pl.'s Opp'n," ECF No. 23), Defendant the United States of America's Opposition to Motion to Substitute ("U.S. Opp'n," ECF No. 24), and Defendant Carriedo-Ceniceros' Reply in Support of Motion ("Reply," ECF No. 24). The Court held a hearing on October 28, 2020. (*See* ECF No. 42.) Having carefully considered the Parties' arguments, the evidence, and the law, the Court **GRANTS IN PART AND DENIES IN PART** the Motion as follows.

/ / /

**BACKGROUND**

**I.     Plaintiff's Allegations**

San Ysidro Health Center ("SYHC") is a federally qualified health center and a Federal Torts Claims Act deemed facility. (First Am. Compl. ("FAC," ECF No. 6) ¶ 12.) At all relevant times, SYHC employed Dr. Leon Fajerman, M.D., as a psychiatrist. (*Id.* ¶¶ 3, 20.)

Plaintiff C.K. is an adult female living in San Diego County. (*Id.* ¶ 18.) Around 2012, Plaintiff began seeing Dr. Fajerman for psychiatric treatment at SYHC. (*Id.* ¶ 28.)

Dr. Fajerman had a history of sexually and harassing his patients, (*id.* ¶ 4), and female social workers and receptionists at SYHC. (*Id.* ¶ 5.) In 2017, before Dr. Fajerman sexually harassed C.K., another of Dr. Fajerman's patients reported to her therapist at SYHC that Dr. Fajerman was sexually abusing her, including touching her breasts. (*Id.* ¶ 6.) The therapist recorded the complaints in the patient's chart and reported the abuse to his supervisor, who reported the alleged abuse to SYHC's then-medical director, Defendant Dr. Carriedo-Ceniceros. (*Id.*)

Consequently, SYHC and Dr. Carriedo-Ceniceros were aware of Dr. Fajerman's inappropriate conduct towards his patients and other women working at SYHC. (*See id.* ¶ 4.) They were also aware that the Medical Board of California was investigating Dr. Fajerman for similar complaints. (*Id.*) Nonetheless, despite being mandatory reporters, neither SYHC nor Dr. Carriedo-Ceniceros reported Dr. Fajerman's abuse, instead covering it up. (*Id.* ¶ 8; *see also id.* ¶¶ 11, 14.)

In 2016 through 2017, Dr. Fajerman made C.K. feel uncomfortable on several occasions by, among other things, making statements regarding C.K.'s romantic of sexual relationships, appearance, and genitalia or initiating physical contact during her appointments. (*Id.* ¶ 29.) C.K. reported Dr. Fajerman's conduct to a nurse at SYHC in 2017. (*Id.* ¶ 31.) The nurse took notes and entered them in an SYHC computer and told C.K. that other patients had made similar complaints against Dr. Fajerman that year. (*Id.*)
///

The nurse showed C.K. the computer screen, which displayed reports of abuse from other patients. (*See id.*)

On June 8, 2017, Dr. Fajerman pulled C.K. to him, kissed her, grabbed her breasts, and asked, "Aren't you being sexual lately?" (*Id.* ¶ 32.) C.K. pushed Dr. Fajerman away and left his office. (*Id.*) She has not seen Dr. Fajerman since. (*Id.*)

C.K. later learned that Dr. Fajerman had sexually harassed and assaulted several other patients around that period and before her appointments with him. (*Id.* ¶ 34.) As a result of the allegations by SYHC patients, Dr. Fajerman surrendered his medical license in May 2018. (*Id.* ¶ 35; *see also id.* ¶ 7.)

The District Attorney filed nine criminal charges for sexual exploitation and battery against Dr. Fajerman on May 23, 2018. (*Id.* ¶ 36.) Dr. Fajerman was arrested the following day. (*Id.*) Dr. Fajerman pled guilty on October 22, 2018, thereby admitting to unlawfully engaging in acts of sexual contact with at least seven female patients at SYHC, including C.K. (*See id.* ¶ 37.) Dr. Fajerman was sentenced to one year of house arrest, ordered to pay $300 in restitution to each of his victims, placed on probation, and ordered to no longer practice medicine or psychology in California. (*Id.* ¶ 38.)

## II. Procedural Background

On December 30, 2019, C.K. filed her initial Complaint, alleging a single cause of action for negligence against the United States and Doe defendants. (*See generally* ECF No. 1.) On March 11, 2020, C.K. filed the operative First Amended Complaint, adding as a Defendant Dr. Carriedo-Ceniceros and additional causes of action for violation of civil rights under 42 U.S.C. § 1983, conspiracy to violate civil rights under 42 U.S.C. § 1986, premises liability, and negligence and negligence per se. (*See generally* FAC.)

Although Dr. Carriedo-Ceniceros had not yet been formally served, she forwarded copies of the pleadings to the U.S. Department of Health and Human Services upon learning of the First Amended Complaint and requested coverage under the Federal Tort Claims Act ("FTCA") pursuant to 42 U.S.C. § 233(a). (Mot. at 4–5.) On June 18, 2020, Dr. Carriedo-Ceniceros received a response from George Manahan, an Assistant United

States Attorney, on behalf of Robert S. Brewer, Jr., the United States Attorney for the Southern District of California. (*See generally* ECF No. 19-3 ("Mot. Ex. C").) Mr. Brewer denied Dr. Carriedo-Ceniceros' request, concluding that "[t]he claims against Dr. Carriedo are not claims for damages for injury resulting from the performance of medical, surgical, dental, or related functions, as that phrase is used in the [Federally Supported Health Centers Assistance Act of 1992 ("FSHCAA")] and 42 C.F.R. § 6.6(b)," meaning "they do not involve covered activities and are not eligible for FTCA coverage under the FSHCAA." (*Id.* at 2.)

Dr. Carriedo-Ceniceros filed the instant Motion on July 21, 2020. (*See generally* Mot.) Dr. Carriedo-Ceniceros seeks (1) a determination that C.K.'s allegations arise from Dr. Carriedo-Ceniceros' performance of medical or related functions as required for FTCA coverage under the FSHCAA ("Motion for Substitution"), and (2) a stay of all proceedings until the Court conducts a hearing and makes a threshold immunity determination pursuant to Section 233(*l*)(2) ("Motion to Stay"). (*See* Mot. at 2.)

## LEGAL STANDARD

As a general principle, the United States "may not be sued without its consent." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). The FTCA, however, provides consent to be sued for certain types of actions. Specifically, the FTCA provides that the United States may be sued "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 42 U.S.C. § 1346(b). The FTCA provides the exclusive remedy for tort lawsuits against the United States and allows the United States to be held liable to the same extent as a private employer under state law. 28 U.S.C. § 2679.

On December 31, 1970, Congress enacted the Emergency Health Personnel Act of 1970, which "grants absolute immunity to [U.S. Public Health Service ("PHS")] officers and employees for actions arising out of the performance of medical or related functions within the scope of their employment by barring all actions against them for such

conduct."[1] *Hui v. Castaneda*, 559 U.S. 799, 806 (2010). On October 24, 1992, Congress enacted the FSHCAA, 42 U.S.C. § 233(g), which extends to certain entities and their employees that are "deemed" to be PHS employees the immunity provided by Section 233(a). *See* 42 U.S.C. § 233(g)(1)(A). The purpose of the FSHCAA was to reduce the amount of money neighborhood health centers had to pay for malpractice premiums, thereby allowing those health centers to use more of their federal funds for patient care.[2]

"The only proper defendant in an FTCA action is the United States of America." *Pinzon v. Mendocino Coast Clinics Inc.*, No. 14-CV-05504-JST, 2015 WL 2452822, at *2 (N.D. Cal. May 21, 2015) (citing 28 U.S.C. § 2679(d)). "Because the remedy provided by the FTCA against the United States is exclusive, the United States must be substituted in place of the health service parties if the conditions of certification set forth in the relevant statutes are met." *Lowery v. Reinhardt*, No. CIV. S-07-0880RRBDA, 2008 WL 550083, at *5 (E.D. Cal. Feb. 27, 2008) (citing 28 U.S.C. § 2679(d)(1); 42 U.S.C. § 233(c)). Under regulations promulgated pursuant to Section 233, immunity and substitution are

---

[1] The relevant provision, 42 U.S.C. § 233(a), provides in relevant part:

> The remedy against the United States provided by sections 1346(b) and 2672 of Title 28 . . . for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions . . . by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment, shall be exclusive of any other civil action or proceeding by reason of the same subject-matter against the officer or employee (or his estate) whose act or omission gave rise to the claim.

[2] Representative Barney Frank of Massachusetts, for example, explained to the House of Representatives that the FSHCAA "essentially allows neighborhood health centers to use part of their appropriation at no additional cost to be covered under the Federal [To]rt Claims Act, obviating the need for them to spend millions of dollars a year on private malpractice insurance." 138 Cong. Rec. H11662-01, H11662, 1992 WL 280140. Senator Orrin Hatch of Utah confirmed before the Senate that the FSHCAA "will allow the Nation's 2,000 community, migrant, homeless, and public housing health centers to obtain liability protection by placing them under the umbrella of the Federal Tort Claims Act," thereby "reduc[ing] the malpractice insurance premium costs of these facilities and their doctors," resulting in "funds . . . be[ing] made more available for services to people instead of being tied up in malpractice premiums." 138 Cong. Rec. S17862-01, S17863, 1992 WL 279542.

appropriate only where (1) the health service defendant is a "deemed" employee of PHS, 42 C.F.R. § 6.6(a); (2) the "claims . . . result[ed] from the performance of medical, surgical, dental, or related functions," 42 C.F.R. § 6.6(b); and (3) for individuals, the alleged "acts and omissions [occurred] within the scope of their employment." 42 C.F.R. § 6.6(d).

## ANALYSIS

For purposes of this Motion, the parties agree that Dr. Carriedo-Ceniceros was a "deemed" employee of PHS and that the challenged "acts and omissions" of Dr. Carriedo-Ceniceros occurred within the scope of her employment at SYHC. (*See* Mot. at 10; U.S. Opp'n at 10 n.9; Tr. at 8:24–9:11.) Consequently, the Court must determine only (1) whether C.K.'s allegations arise from Dr. Carriedo-Ceniceros' performance of medical or related functions; and (2) if so, whether the United States be substituted in place of Dr. Carriedo-Ceniceros as a Defendant in this action. For the reasons set forth below, the Court finds that both questions must be answered in the affirmative.

### I. Jurisdiction/Authority to Decide Dr. Carriedo-Ceniceros' Motion

Preliminarily, the United States asserts that 42 U.S.C. § 233 does not provide the Court with jurisdiction or authority to answer the first of the two above-noted questions. (*See* U.S. Opp'n at 2–6.; *see also* Tr. at 10:19–11:19, 25:23–26:24.) According to the United States, Section 233(*l*) does not "grant Dr. Carriedo any rights in this federal suit, much less the right to move to substitute the United States for her or otherwise challenge the United States' denial of her application for FTCA coverage." (U.S. Opp'n at 4.) The United States cites a number of cases for the proposition that, because Section 233(*l*) does not allow a case to be removed from state to federal court for the purpose of challenging a negative FTCA coverage decision, a defendant in a potential removal action who seeks to challenge an adverse coverage decision may do so only via a separate suit under the Administrative Procedures Act, 5 U.S.C. §§ 701–706. (*Id.* at 4–5 (citing *El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. U.S. Dep't of Health & Human Servs.*, 396 F.3d 1265, 1271 (D.C. Cir. 2005); *Q. v. Cal. Hosp. Med. Ctr.*, No. CV 17-7917-R, 2018 WL 1136568, at *2 (C.D. Cal. Mar. 1, 2018); *K.C. v. Cal. Hosp. Med. Ctr.*, 2:18-CV-06619-RGK-ASX,

2018 WL 5906057, at *5 (C.D. Cal. Nov. 8, 2018)).) The United States is correct in its analysis of how Section 233(*l*) gives a court limited jurisdiction over a FTCA case initially filed in state court; however, the Court finds Section 233(*l*) and its attendant jurisdictional limitations to be inapplicable to the instant motion. As noted above, this case was originally filed in federal court against the United States and the First Amended Complaint alleges multiple violations of federal statutes. Thus, it cannot be credibly argued that the Court lacks jurisdiction over this matter, and the removal/jurisdictional provisions of Section 233(*l*) simply do not apply.

Mixed in with its analysis of Section 233(*l*) is the United States' assertion that the Court lacks the authority to assess the applicability of Section 233(a)'s immunity provisions to the facts of this case. (*See* U.S. Opp'n at 2–4.) The United States fails to cite a single case to support that argument. To the contrary, in *Hui v. Castaneda*, the United States Supreme Court found that although immunity under Section 233(a) is "contingent upon the alleged misconduct having occurred in the course of the PHS defendant's duties, . . . *a defendant may make that proof pursuant to the ordinary rules of evidence and procedure*." 559 U.S. at 811 (emphasis added). If, as the United States claims, the Court does not have the ability to evaluate the applicability of Section 233(a)'s immunity provisions, then to whom would a defendant "make that proof pursuant to the ordinary rules of evidence and procedure?" The Court finds *Hui* to be controlling on the issue of the Court's ability to determine the applicability of Section 233(a)'s immunity protections and, if necessary, to "effect substitution of the United States." 559 U.S. at 811.[3] That the

---

[3] *See also D'Alessandro v. United States*, No. 113CV00416MATHKS, 2019 WL 2514827, at *8 (W.D.N.Y. June 18, 2019) (relying on *Hui* to conclude that "it is proper to accept certification pursuant to 42 U.S.C. § 233(g)(1)(F) as triggering the mandatory substitution of the United States as the proper defendant under the Westfall Act, [28 U.S.C. § 2679(d),] and that no special certification through the Westfall Act was required"); *Kezer v. Penobscot Cmty. Health Ctr.*, No. 1:15-cv-00225-JAW, 2019 BL 141566, at *6–7 (D. Me. Mar. 21, 2019) ("In light of [*Hui* and other cases], the lack of a specific mechanism for substitution in § 233 does not prohibit the Court from ordering substitution as an exercise of its limited jurisdictional authority [under § 233(*l*)]."); *Thomas v. Phoebe Putney Health Sys., Inc.*, No. 1:18-CV-096 (LAG), 2019 WL 6039976, at *3 (M.D. Ga. Mar. 6, 2019) (relying on *Hui* to conclude that the defendant medical center and physician could petition the court for certification of their scope of

Court must do so "based on the ordinary rules of evidence and procedure" is made simple in this case because, as set forth below, *see infra* Section II, the operative facts are not in dispute. (*See also* Tr. at 19:17–21:3.)

**II.     Whether the Claims Are for "Covered Activities"**

C.K. asserts three claims against Dr. Carriedo-Ceniceros: (1) violation of C.K.'s civil rights under 42 U.S.C. § 1983, (FAC ¶¶ 66–71); (2) conspiracy to violate C.K.'s civil rights under 42 U.S.C. § 1986, (FAC ¶¶ 72–79); and (3) negligence and negligence per se. (*Id.* ¶¶ 89–96.) C.K.'s claims against Dr. Carriedo-Ceniceros are premised on Dr. Carriedo-Ceniceros' alleged failure to report Dr. Fajerman's abuse, despite being a mandatory reporter under California law,[4] and her alleged "cover[] up" of the abuse. (*See id.* ¶¶ 8–11, 71, 75–78, 90–95.) Because it is undisputed that Dr. Carriedo-Ceniceros was a deemed PHS employee and acting within the scope of her employment, (*see* Mot. at 10; U.S. Opp'n at 10 n.9; Tr. at 8:24–9:11), the only issue is whether Dr. Carriedo-Ceniceros' alleged failure to report and cover up of Dr. Fajerman's abuse are "medical . . . or related functions" for purposes of Section 233(a). *See* 42 U.S.C. § 233(a); 42 C.F.R. § 6.6(b). The Court concludes that they are.

Relying on *Teresa T. v. Ragaglia*, 154 F. Supp. 2d 290 (D. Conn. 2001), and *Z.B. ex rel. Next Friend v. Ammonoosuc Community Health Services Inc.*, Nos. Civ. 03-540(NH) & Civ. 04-34-P-S (ME), 2004 WL 1571988 (D. Me. June 13, 2004), Dr. Carriedo-Ceniceros contends that, "[w]here state law imposes a duty to report certain injuries or abuse on medical providers acting in their professional capacity, a provider's performance (or nonperformance) of that duty is a related function for purposes of § 233 immunity."

---

employment pursuant to 28 U.S.C. § 2679(d)(3)), *appeal dismissed*, 972 F.3d 1195 (11th Cir. 2020); *Pinzon v. Mendocino Coast Clinics Inc.*, No. 14-CV-05504-JST, 2015 WL 2452822, at *2–3 (N.D. Cal. May 21, 2015) (concluding that motion to dismiss for lack of subject-matter jurisdiction was premature where the defendant medical clinic had not yet sought substitution of the United States or shown that the physician was acting within his scope of employment).

[4] *See* Cal. Penal Code §§ 11160(a), 11162.5(a), 11165.7(a)(21).

(Mot. at 11–12.)  Because "Dr. Carriedo only has a duty to report sexual abuse when she is acting as a doctor providing medical services . . . , her duty to report is . . . inextricably woven into her performance of medical functions."  (*Id.* at 13 (citing Cal. Penal Code §§ 11160(a), 11165.7(a)(21)).)

The United States responds that Dr. Carriedo-Ceniceros' alleged failure to report and cover up of Dr. Fajerman's abuse "is not the sort of behavior that is immunized as 'the performance of medical, surgical, or related functions' under the FSHCAA . . . or the related regulation . . . since it is well outside a claim that sounds in medical malpractice." (U.S. Opp'n at 7–8 (citing ECF No. 10 at 5–14).[5])  The United States also distinguishes *Teresa T.* and *Z.B.* on the ground that they involved "health care providers whose failure to report were directly related to their provision of health care," (U.S. Opp'n at 9), while Dr. Carriedo-Ceniceros "was a medical administrator . . . not involved in the evaluation or care of Plaintiff."  (*Id.* at 10.)

Citing *Teresa T.*, the United States itself has recognized that a statutory duty to report suspected abuse may be a "related function" for purposes of Section 233(a) that sounds in medical malpractice "because it adds a required element to the doctor's evaluation of his patient."  (*See* ECF No. 10 at 7–8 (quoting *Teresa T.*, 154 F. Supp. 2d at 300).)  The United States' attempts to distinguish *Teresa T.* are unavailing.  First, the United States' contention that *Teresa T.* is inapplicable because Dr. Carriedo-Ceniceros was a medical administrator fails given C.K.'s allegations that Dr. Carriedo-Ceniceros was statutorily mandated to report Dr. Fajerman's abuse.  (*See* FAC ¶¶ 8–11, 71, 75–78, 90–95.)  As Dr. Carriedo-Ceniceros notes, (*see* Reply at 7 (quoting Cal. Penal Code § 11160(a)), and the United

---

[5] In its motion to dismiss, the United States argues that "claims that are not strictly medical malpractice claims, but that 'sound' in medical malpractice in that the alleged tortious conduct relate directly to the provision of care by a medical professional to a patient, come within FSHCAA's requirement that a claim of injury 'result[] from the performance of medical, surgical, dental, or related functions.'"  (ECF No. 10 at 7 (alteration in original).)  The United States cites *Teresa T.*, which involved a state statutory duty to report, and *Mele v. Hill Health Center*, No. 3:06CV455SRU, 2008 WL 160226 (D. Conn. Jan. 8, 2008), which involved ensuring the privacy of patient medical information, as examples.  (*See* ECF No. 10 at 7–8.)

States does not dispute, (*see* Tr. at 4:4–10), "California imposes a mandatory reporting duty on health practitioners regarding adult sexual abuse only when the practitioner 'provides medical services for a physical condition to a patient,'" meaning "any claims based on Dr. Carriedo's status as a mandatory reporter necessarily arise from the performance of medical or related functions."

Further, the mandatory reporting duty has been extended "beyond health practitioners who treat a patient's physical injury to every physician or surgeon who has such a patient 'under his or her charge or care.'" *See Ortegoza v. Kho*, No. 12-CV-00529-L-KSC, 2013 WL 12071637, at *4 (S.D. Cal. Dec. 4, 2013) (quoting Cal Pen. Code § 11161). This section "applies more broadly" than Section 11160, *see Pipitone v. Williams*, 244 Cal. App. 4th 1437, 1450 (2016), encompassing, for example, a retired physician who made a ten-minute house call in the middle of the night to provide over-the-counter pain medication to his daughter-in-law. *See id.* at 1440–41. Dr. Carriedo-Ceniceros' duties as the Chief Medical Officer of SYHC, including "overseeing its medical operations" and "overseeing daily clinical operations," (*see* Declaration of Maria Carriedo-Ceniceros, M.D., ECF No. 19-2, ¶ 5), likely suffice to bring SYHC's patients, including C.K., "under . . . her charge or care." *See* Cal Pen. Code § 11161; *see also* Tr. at 21:25–22:23:18, 25:14–27:14.

At the hearing, the United States argued broadly that "related functions" for purposes of Section 233 must be "somehow related to a direct relationship between a health care provider and a patient," in other words, "[b]asically you've got to be the health care provider in the exam room or the person taking care of the patient." *See* Tr. at 5:6–10. The court in *Kezer* rejected a similar argument, concluding that "the immunity afforded by § 233 is not as limited as . . . the United States suggest[s]." *See* 2019 BL 141566, at *6. Not only did breach of patient confidentiality fall within the scope of medical malpractice for purposes of Maine law, but "[t]he Court c[ould] find no caselaw, and the United States offer[ed] none, to support its contention that § 233 immunity is limited to claims arising from direct medical treatment." *See id.* Rather, the court reasoned, administrative or

operational duties could qualify as related functions where they were connected to the provision of medical care. *See id.* (citing *Brignac v. United States*, 239 F. Supp. 3d 1367, 1377 (N.D. Ga. 2017); *De La Cruz v. Graber*, No. CV 16-1294 VBF (AS), 2017 WL 4277129 (C.D. Cal. June 15), *report and recommendation adopted*, 2017 WL 42271122 (C.D. Cal. Sept. 21, 2017)). As in *Kezer*, applicable state law supports a medical malpractice claim, *see, e.g.*, *Landeros v. Flood*, 17 Cal. 3d 399, 413–14 (1976) (reversing dismissal of medical malpractice claim based on failure to report suspected abuse), and the United States fails to cite any cases limiting the application of Section 233 to direct medical treatment. Rather, Dr. Carriedo-Ceniceros' argument that the FSHCAA was extended to board members, (*see* Tr. at 15:4–18; *see also, e.g.*, 42 U.S.C. § 233(g)(1)(A)), who do not themselves provide medical care, undercuts the United States' narrow reading.

Also unavailing is the United States' attempt to distinguish *Teresa T.* based on C.K.'s allegations that Dr. Carriedo-Ceniceros not only failed to report the abuse but affirmatively covered it up. Not only is "[t]here . . . nothing in the FSHCAA which limits the defendants' liability to actions in negligence only," *see Teresa T.*, 154 F. Supp. 2d at 299, but the alleged coverup "emanates from the manner in which defendant[] performed [her statutory duty to report], a matter that is an ordinary and usual part of medical professional services." *See Cent. Pathology Serv. Med. Clinic, Inc. v. Super. Ct.*, 3 Cal. 4th 181, 192–93 (1992) (concluding that intentional tort claims based on physician's alleged coverup of medical negligence arose out of the physician's professional negligence for purposes of California's Medical Injury Compensation Reform Act).

Consequently, under *Teresa T.*, C.K.'s claims against Dr. Carriedo-Ceniceros resulted from Dr. Carriedo-Ceniceros' performance of medical or related functions. *See* 154 F. Supp. 2d at 299–300. The Court therefore concludes that C.K.'s claims are for covered activities for purposes of Section 233(a).

**III. Substitution of the United States**

Based on the Court's determination that C.K's claims are for covered activities and that Dr. Carriedo-Ceniceros is therefore a "covered person" under Section 233(a), *see*

*supra* Section II, the Court **GRANTS** Dr. Carriedo-Ceniceros' Motion for Substitution. *See Hui*, 559 U.S. at 811; 42 U.S.C. § 233(b) ("The Attorney General *shall defend* any civil action or proceeding brought in any court against any person referred to in subsection (a) of this section (or his estate) for any such damage or injury.") (emphasis added).

## IV.   Motion to Stay

The Court **DENIES AS MOOT** Dr. Carriedo-Ceniceros' Motion to Stay. (*See* Tr. at 19:9–11.)

## CONCLUSION

In light of the foregoing, the Court **GRANTS IN PART AND DENIES IN PART** Defendant Carriedo-Ceniceros' Motion (ECF No. 19).  Specifically, the Court **GRANTS** the Motion for Substitution and **DENIES AS MOOT** the Motion to Stay.  Accordingly, the Court **DISMISSES** Defendant Carriedo-Ceniceros and **SUBSTITUTES** the United States as defendant in her place.

**IT IS SO ORDERED.**

Dated:  November 12, 2020

_____
Honorable Todd W. Robinson
United States District Court